UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

**FOR PUBLICATION**

In re:

PETER A. JACOBSON and
MARIA E. JACOBSON,

Debtors.

No. 08-45120

**DECISION ON RELIEF FROM STAY**[1]

Before the court is a motion for relief from the automatic stay of § 362(a)[2] to enforce a deed of trust on the Debtors' residence. As it was neither brought in the name of the real party in interest, nor by anyone with standing, the motion for relief from stay will be DENIED.

---

[1] Minor clerical changes have been made to the Decision, originally filed 6 March 2009, as reflected in the Notice of Clerical Changes filed herewith. That version (docket no. 48) is superseded.

[2] Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" and "FRE" references to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, respectively.

"GR" references are to the Local Rules, U.S. District Court, W.D. Washington, and "LBR" to the Local Bankruptcy Rules, W.D. Washington.

"RCW" references are to the Revised Code of Washington.

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 1 of 18

# I. History

Attached to the motion of "UBS AG, as servicing agent for ACT Properties, LLC ("Movant")" (docket no. 31) are unauthenticated copies of:

1. The adjustable rate note purportedly executed on 14 November 2009 in Elkridge, Maryland, by Debtors in favor of Castle Point Mortgage, Inc., which bears an undated "without recourse" indorsement in blank by someone identified as "VP/CFO";

2. A barely-legible copy of Debtors' deed of trust in favor of Castle Point Mortgage (as "lender"); the beneficiary is identified as Mortgage Electronic Registration Systems, Inc. ("MERS"), a separate corporation, "solely as nominee for lender and lender's successors and assigns," with an adjustable rate rider (executed in Pierce County, Washington, on the same day as the note, according to the acknowledgment);

3. An apparently unrecorded "Assignment of Mortgage" to ACT Properties, LLC, referencing the deed of trust by parties, date, and recording number, executed by a director of MERS in December of 2008, according to the acknowledgment; and

4. Debtors' real property and secured claims schedules (A and D, respectively, the latter identifying the secured creditor as "UBS").

The motion notes Debtors' bankruptcy petition, filed 7 October 2008, the attendant automatic stay, and goes on to recount the history of the loan, including its transfer "to Movant," stating that Wells

Fargo Document Custody "has possession" of the original note in Minneapolis, Minnesota. The narrative continues with Debtors' default and the commencement of non-judicial foreclosure proceedings, with sale set for 17 October 2008, (presumably by a predecessor in interest of ACT Properties, since it was pre-assignment; the foreclosing party is not identified). The Debtors' filing automatically stayed the foreclosure, § 362(a); the motion indicates no foreclosure activity is pending. There follows a calculation of the amounts due and lack of equity, and sketchy argument that the Movant is entitled to relief under § 362(d)(1) for lack of adequate protection.

The motion is supported by the declaration of a "bankruptcy specialist" (docket no. 32) which parrots the narrative set forth in the motion (or perhaps it is the other way around — the text respecting the history of the transaction and documentation is virtually identical, and both make the same mistake regarding the date the deed of trust was executed — they both state that the deed of trust was executed 8 December 2006, while the acknowledgment shows it as 14 November 2006). Declarant, too, declares that Wells Fargo Document Custody "has possession" of the original note in Minnesota, and indicates that true copies of the note, deed of trust, and assignment are attached, but there are no exhibits to the filed declaration. The declaration was executed in Irvine, California.

No evidence is provided, nor is any assertion even made, regarding UBS AG's authority to act for the holder of the note, beyond the unelaborated statements that it is "servicing agent for ACT Properties,

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 3 of 18

LLC" in the motion, and "servicing agent for ACT Properties, LLC, its successors and/or assigns" in the declaration.

Nor do the papers disclose what kind of an entity "UBS AG" is. "AG" may indicate a corporate entity from Germany, Switzerland, Liechtenstein, Austria, or perhaps elsewhere, and UBS is a major Swiss financial institution. See Nelson D. Schwartz, For Swiss Banks, an Uncomfortable Spotlight, Int'l Herald Tribune, March 4, 2009,[3] and UBS AG: a Short History.[4]

This latter point became significant when Debtors, pro se (although they have counsel), filed their Motion to Dismiss Movant's Motion for Relief from Stay (docket no. 44), the thrust of which is that UBS transferred the security in the real property to the Central Bank of Switzerland in return for approximately $220,000, and referencing numerous press and internet accounts respecting the Swiss bank. Debtors do not explicate how they reach the conclusion, from news stories about the handling of toxic assets in the banking systems of this country and Switzerland, that UBS (or UBS AG, which only claims to service the loan for another holder) was paid an amount approximating the default alleged in the motion. That said, they raise a standing question.

---

[3] available at:

http://www.iht.com/articles/2009/03/04/business/04swiss.php (last visited 4 March 2009)

[4] available at:

http://www.ubs.com/1/e/about/history/a_short_history.html?isPopup=yes (last visited 5 March 2009).

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 4 of 18

UBS AG's counsel, while located in San Diego, California, is admitted to practice in this district and electronically filed the motion and supporting papers. He continued the motion once and then confirmed the motion for hearing two days prior to the calendar, also via the court's electronic filing system. A local practitioner whose role in the case was not disclosed in the docket appeared for UBS AG at the continued hearing; Debtor Peter Jacobson appeared pro se.

## II. Jurisdiction

This is a core proceeding within this court's jurisdiction. 28 U.S.C. §§ 1334(a) and (b), and 157(a) and (b)(2)(G); GR 7, ¶ 1.01, Local Rules, W.D. Washington.

## III. Issues

### A. Appearances

Were the parties properly represented at hearing?

### B. Real Party in Interest

Is a "servicing agent" the real party in interest in whose name a relief from stay motion may be brought?

### C. Standing

Does UBS AG or Movant have standing to seek relief from stay to enforce Debtors' deed of trust?

## IV. Analysis

### A. Appearances

Debtors were and still are represented by counsel in this case. Although they filed their response to the motion pro se, they indicate having informed counsel of their intent to file their response. I infer counsel declined to argue their position. Nevertheless, because I have an independent duty to determine jurisdiction, see part IV.C. below, the question is before me, and Mr. Jacobson appeared at the hearing.

GR 2(g)(1) permits the court to hear represented individuals, even though their counsel is not present:

> Whenever a party has appeared by attorney, the party cannot thereafter appear or act in his own behalf in the case, or take any step therein . . .; provided, that the court may in its discretion hear a party in open court, notwithstanding the fact that he has appeared, or is represented by attorney.

Respecting Movants' representation at the hearing, Rule 9010(b) provides that:

> [a]n attorney appearing for a party in a case under the Code shall file a notice of appearance with the attorney's name, office address and telephone number, unless the attorney's appearance is otherwise noted in the record.

(emphasis added). In other words, an attorney must first file a notice of appearance containing the data specified in Rule 9010(b) to represent a party in a hearing.

In addition to Rule 9010(b), a local rule of the U.S. District Court for the Western District of Washington, which applies via LBR 9029-2,[5] requires:

---

[5] Which provides:

The Local Rules of the United States District Court

> An attorney eligible to appear may enter an appearance in a civil case by signing any pleading or other paper described in Rule 5(a), Federal Rules of Civil Procedure, filed by or on behalf of the party the attorney represents, or by filing a Notice of Appearance.

GR 2(h). No formal notice of appearance is required so long as the new attorney has somehow made his or her involvement in the case known prior to the hearing, such as by signing and filing pleadings.

But once counsel has appeared, GR 2(g)(3) provides:

> The authority and duty of attorneys of record shall continue until there shall be a substitution of some other attorney of record, except as herein otherwise expressly provided, and shall continue after final judgment for all proper purposes.

And GR 2(g)(2)(B):

> Where there has simply been a change or addition of counsel within the same law firm, an order of substitution is not required; the new attorney will file a Notice of Appearance and the withdrawing attorney will file a Notice of Withdrawal. However, where there is a change in counsel that effects a termination of one law office and the appearance of a new law office, the substitution must be effected . . . which requires leave of court.

And, of course, corporations must be represented by counsel in federal court. See Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993).

The careful reader will have noticed that none of the foregoing rules directly address the situation where the original attorney continues as counsel of record, but another lawyer, not of the same

---

for the Western District of Washington (herein "Local Rules W.D. Wash.") are rules of the United States Bankruptcy Court for the Western District of Washington, except as they may be inconsistent with Title 11, United States Code (herein "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, or these Local Bankruptcy Rules.

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 7 of 18

firm, joins for some portion of the representation. But, read together, the requirement of corporate representation and the continuing role of counsel of record preclude interloping counsel. For other attorneys not part of the same firm as record counsel to represent a party, something must be done of record. Customarily, this is accomplished by filing a notice of association, and it is common when lead counsel is distant and the use of local counsel for particular matters in the case will promote efficiency, or the new counsel provides particular expertise. Once the notice of association is served and filed, all parties to the case are aware of the changed representation, and associated counsel receives notice directly of events and filings in the case.

The practice of undisclosed "appearance attorneys" creates problems — other parties (and the court) are sandbagged, and the Debtor, trustee, other creditors, and counsel cannot readily communicate regarding scheduling or substance. In addition to the ramifications of this practice, explored in In re Wright, 290 B.R. 145 (Bankr. C.D. Cal. 2003); Hon. Jim D. Pappas, Simple Solution = Big Problem, 46 The [Idaho] Advocate 31 (Oct. 2003); and Neil M. Berman, Judge, This is Not My Case . . ., Norton Bankr. L. Adviser 3 (May 2004), the lack of formal association could raise questions about the informally-appearing attorney's authority to speak for, and make judicial admissions on behalf of, the client (the contrary suggestion would not be a promising argument).

While this defect is not dispositive, clarity of representation on the record is important to judicial economy and the orderly representation of other parties. So I will require, absent emergency or

significant hardship, formal notice of association to be filed not later than the confirmation of the hearing. And there is no remedy for self-inflicted harm — law firms undertaking distant representations must be prepared to appear or timely associate local counsel who will. As corporations must be represented by counsel in federal court, the consequence of not having counsel of record at hearing will be that the party's position may be deemed without merit. See LBR 9013-1(e)(1).[6] This is the flip side of Woody Allen's observation that "Eighty per cent of success is showing up"[7] — if you (or your counsel of record if you are a corporate entity) don't, your chance of success approaches zero.

In short, henceforth only counsel of record or individuals representing themselves will be heard.

B. **Real Party in Interest**

The moving party here is UBS AG, which claims only to be a servicer for the holder of the note. It neither asserts a beneficial interest in the note, nor that it could enforce the note in its own right. As noted in In re Hwang, 396 B.R. 757, 766-67 (Bankr. C.D. Cal 2008), Rule 4001 makes stay relief a contested matter by providing that Rule 9014 governs. That rule in turn applies Rule 7017, imposing FRCP 17's

---

[6] Which provides:

> [A]ppearance is required at all scheduled hearings. Failure to appear at the date and time appointed for hearing may be deemed by the court to be an admission that the motion, or the opposition to the motion, as the case may be, is without merit.

[7] Quoted in Thomas J. Peters and Robert H. Waterman, In Search of Excellence, Harper & Row 1982, at 119.

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 9 of 18

requirement[8] that actions be prosecuted in the name of the real party interest.

> [t]he right to enforce a note on behalf of a noteholder does not convert the noteholder's agent into a real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name."

Hwang, 396 B.R. at 767, quoting 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1553.

The real party in interest in relief from stay is whoever is entitled to enforce the obligation sought to be enforced. Even if a servicer or agent has authority to bring the motion on behalf of the holder, it is the holder, rather than the servicer, which must be the moving party, and so identified in the papers and in the electronic docketing done by the moving party's counsel.

It follows that orders granting relief from stay must do so to the holder of the obligation to be enforced — not the servicer or others, or the collective "Movant," as in the proposed order UBS AG submitted. Of course, setting forth that the holder may act through agents, or may later assign or transfer the interest, e.g., "ACT Properties, LLC, and its agents, successors, and assigns," is appropriate.

---

[8] Which provides in (a)(1):

An action must be prosecuted in the name of the real party in interest. . . .

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 10 of 18

If UBS AG'S motion had merit, the standing deficiency could be cured by joinder, as FRCP 17(a)(3),[9] applicable via Rules 9014 and 7017, allows. As will be seen, joinder would not salvage this motion.

C. **Standing**

UBS AG has submitted no evidence that it is authorized to act for whomever holds the note. That deficiency puts its standing in question, See In re Parrish, 326 B.R. 708, 720-21 (Bankr. N.D. Ohio 2005), and I have an independent duty to determine whether I have jurisdiction over matters that come before me. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990). I must therefore determine whether UBS AG (or Movant) has standing to seek relief from stay.

1. **Law**: For a federal court to have jurisdiction, the litigant must have constitutional standing, which requires an injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551 (1996).

> [T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Standing doctrine embraces several judicially self-imposed limits on the exercise of federal

---

[9] Which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . .

. . . .

Typically . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.

Allen v. Wright, 468 U.S. 737, 750-52 (1984) (citations omitted). Constitutional standing, predicated on the "case or controversy" requirement of Article III of the Constitution, is a threshold jurisdictional requirement, and cannot be waived. Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co., 219 F.3d 895, 899-900 (9th Cir. 2000).

A litigant must also have "prudential standing," which stems from rules of practice limiting the exercise of federal jurisdiction to further considerations such as orderly management of the judicial system. Pershing Park, 219 F.3d at 899-900; In re Godon, 275 B.R. 555, 564-565 (Bankr. E.D. Cal. 2002) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541-42 (1986).

Generally, a party without the legal right under applicable substantive law to enforce the obligation at issue, or pursuing an interest outside those protected by the law invoked or abstract questions more appropriately addressed legislatively, lacks prudential standing. Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1044 (9th Cir. 2008).

Under the Bankruptcy Code, a party seeking relief from stay must establish entitlement to that relief. § 362(d); see In re Hayes, 393 B.R. 259, 266-267 (Bankr. D. Mass. 2008). Foreclosure agents and servicers do not automatically have standing, In re Scott, 376 B.R. 285,

290 (Bankr. D. Idaho 2007); Hwang, 396 B.R. at 767, and must show authority to act for the party which does.

In Washington, only the holder of the obligation secured by the deed of trust is entitled to foreclose. RCW 61.24.005(2) defines "beneficiary" under a deed of trust as the holder of the instrument or document evidencing the obligations secured by the deed of trust.[10] See also Fidelity & Deposit Co. of Maryland v. Ticor Title Ins. Co., 88 Wash. App. 64, 943 P.2d 710 (1997). Having an assignment of the deed of trust is not sufficient, id. at 68-69, because the security follows the obligation secured, rather than the other way around. This principle is neither new nor unique to Washington:

> [T]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.

Carpenter v. Longan, 83 U.S. 271, 275 (1872).

It follows that, to have standing, UBS AG must establish its authority to act for the holder of Debtors' note.

**2. Evidence**: Some courts require a party moving for stay relief to provide admissible evidence tracing the identity of the various holders and servicers of the mortgage or deed of trust in question, and the holders of the note evidencing the underlying obligation. See Hayes, 393 B.R. at 269; and Parrish, 326 B.R. at 720-21. I need not here go so far, because UBS AG's proof neither shows who presently holds Debtors' note nor its own authority.

---

[10] Which renders problematic the identification of MERS "solely as nominee . . ." as the beneficiary of Jacobsons' deed of trust.

While business records may provide the necessary proof, this exception to the hearsay rule[11] requires that the records (1) be made at or near the time by, or from information transmitted by, a person with knowledge; (2) pursuant to a regular practice of the business activity; (3) kept in the course of regularly conducted business activity; and (4) the source, method, or circumstances of preparation must not indicate lack of trustworthiness. These elements must be established by the testimony of a custodian or other qualified witness, and the documents must be authenticated. <u>In re Vinhnee</u>, 336 B.R. 437, 444 (9th Cir. BAP 2005). Specifically, "the record being proffered must be shown to continue to be an accurate representation of the record that originally was created." <u>Id.</u>; FRE 901(a).[12] A declarant authenticating business

---

[11] FRE 803(6) provides:

> Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

[12] Which provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 14 of 18

records must be qualified. The bare assertion that one works for the company and is familiar with its recordkeeping procedures is not sufficient: "there needs to be enough information presented to demonstrate that the person is sufficiently knowledgeable about the subject of the testimony." <u>Vinhnee</u>, 336 B.R. at 448 (citation omitted). The testimony must contain information warranting the conclusion that the proffered records are what they purport to be. <u>Id.</u>

The only evidence UBS AG has submitted is the declaration of one of its bankruptcy specialists. The initial paragraph of the declaration reads:

> I am employed as a Bankruptcy Specialist by UBS AG, as servicing agent for ACT Properties LLC, its successors and/or assigns ("Movant"). In this capacity, I am one of the custodians of the books, records, files and banking records of Movant, as those books, records, files and banking records pertain to the loans and extensions of credit by Movant to Peter A. Jacobson and Maria E. Jacobson ("Debtors"). I have personally worked on said books, records, files and banking records and, as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the Movant's business records, which were made at or about the time of the events which were recorded, and which are maintained in the ordinary course of Movant's business.

Declaration in Support . . . (docket no. 32).

One hopes the declarant is not as unsure of his own identity as this imprecision suggests: is he employed as a bankruptcy specialist by UBS AG only in its capacity as servicing agent for ACT Properties? Or for a successor or assignee of ACT? Or is he a bankruptcy specialist for UBS AG and its successors and/or assigns? Is he one of the custodians of "the books, records, files and banking records" of all of these

---

finding that the matter in question is what its proponent claims.

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 15 of 18

entities? And since the motion must be brought in the name of the real party in interest; i.e., the present holder of Debtors' note, what is the relevance of a possible future successor or assignee? Or if the antecedent of "successors and/or assigns" is UBS AG, how does declarant know he will be employed by whomever it is, or have access to its records?

Setting aside for the moment that no business records are actually proffered — the declarant recounts his conclusions, from whatever records he consulted, and we are told that he is one of the custodians, that he works on those records, that they were made at or about the time of the events recorded, and that they are maintained in the ordinary course of Movant's business. While that formulaic recitation attempts to satisfy FRE 901(a), it would not withstand an objection to admissibility: there is nothing meaningful regarding the declarant's qualifications to authenticate business records, or the reliability of those records in this instance.

That reliability is questionable, given obvious errors, such as the date the Debtors executed the deed of trust and the assertion of a loan or extension of credit "by Movant" to the Jacobsons — the lender (and the payee of their note) was Castle Point Mortgage, Inc., not included in either of the compositions of "Movant" set forth in UBS AG's papers. And which of the matters he recounts are things he knows to be true of his own knowledge, and which did he gain from someone's business records? More fundamentally, ACT Properties was assigned the deed of trust just days before the motion was filed. Why should credence be given to

UBS AG's records "as servicing agent for ACT Properties" respecting anything before that assignment?

But even if all of the deficiencies were overlooked or resolved in Movant's favor, one emerges from the syntactical fog into an impassable swamp. The declaration of someone in California, apparently based on business records, and perhaps predating his employer becoming servicing agent, is that Debtor's note secured by the deed of trust is in "the possession"[13] of a separate entity in Minnesota. Assuming the exhibits to the motion are authentic and are the same as those intended to have been attached to the declaration, the note is indorsed in blank. Without more, that and possession (rather than mere custody) suggests that Wells Fargo is the holder of the note. RCW 62A.3-201[14] and 3-301[15]. Nothing

---

[13] So in both the motion (at 3:11) and in the declaration (at ¶ 4).

[14] Which provides:

(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

[15] Which provides:

"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 17 of 18

in the record establishes on whose behalf (if other than its own) Wells Fargo Document Custody possesses the note; that (and verification of current possession and present ability to produce the original, if required) would have to come from Wells Fargo.

Nor does anything in the record establish UBS AG's authority to enforce the Debtors' note, for whomever holds it; and thus to foreclose the deed of trust. The declaration states that UBS AG is "servicing agent," a term with no uniform meaning, and no definition cited. At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority.

UBS AG has not shown that it has standing to bring the motion for relief from stay or authority to act for whomever does.

### V. CONCLUSION

As the motion was not brought in the name of the real party in interest, nor has standing to bring it been established, it will be **DENIED**.

///    —    **END OF DECISION**    —    ///



Philip H. Brandt
United States Bankruptcy Judge
(Dated as of "Entered on Docket" date above)

---

        not the owner of the instrument or is in wrongful
        possession of the instrument.

(08-45120-Peter A. Jacobson and Maria E. Jacobson)
DECISION ON RELIEF FROM STAY - 18 of 18

# CERTIFICATE OF SERVICE

Be it known that I, Stephanie Tashiro-Townley, did file with the Clerk of the Court, United States Bankruptcy Court to be filed electronically the following documents:

1. RESPONSE TO MOTION FOR RELIEF FROM STAY / MOTION TO DENY MOTION FOR RELIEF FROM STAY
2. EXHIBIT A
3. [PROPOSED] ORDER TO DENY RELIEF FROM STAY

The Documents will be received via ECF by:

JENNIFER ASPAAS
ROUTH, CRABTREE, OLSEN
3535 FACTORIA BLVD. SE #200
BELLEVUE, WA 98006

CHAPTER 13 TRUSTEE

K. MICHAEL FITZGERALD

US TRUSTEE

ATTORNEY DAVID M. LUX

_____
Stephanie Tashiro-Townley